

**STEPHEN QUESENBERRY (8073)**
**J. BRYAN QUESENBERRY (9156)**
**HILL, JOHNSON & SCHMUTZ, L.C.**
Jamestown Square
3319 North University Avenue
Provo, Utah 84604
Telephone (801) 375-6600

**Attorneys for Defendants Frank L. Davis, Harvest Marketing, LLC, and First Harvest, LLC**

IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JENNIFER STEIMKE, as trustee of the ODETTE GRAHAM TRUST, sole beneficiary of the MICHELON FAMILY TRUST, and sole devisee and representative of the ESTATE OF LYNDA STEIMKE MICHELON,<br><br>Plaintiff,<br><br>JAE FORSCHEN, DAVID J. ORR, individually and dba WORLD CONTRACTUAL SERVICES, HARVEST MARKETING, L.L.C., FIRST HARVEST MARKETING, L.L.C., FRANK L. DAVIS, and JOHN DOES 1 through 10,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:03CV00487 DAK<br><br>Judge Dale A. Kimball |

Defendants Frank L. Davis, Harvest Marketing, L.L.C., and First Harvest, L.L.C. ("Defendants"), by and through counsel, hereby submit this Memorandum in Support of Motion for Summary Judgment.

16

**INTRODUCTION**

Plaintiffs have asserted thirteen causes of action against Defendants: (1) Second Claim for Relief: aider and abetter liability – federal law; (2) Fourth Claim for Relief: aider and abetter liability – state law; (3) Fifth Claim for Relief: federal/civil RICO; (4) Seventh Claim for Relief: conspiracy to defraud; (5) Eighth Claim for Relief: negligent misrepresentation; (6) Eleventh Claim for Relief: conversion; (7) Twelfth Claim for Relief: money had and received; (8) Thirteenth Claim for Relief: alter ego liability; (9) Fourteenth Claim for Relief: constructive trust; (10) Fifteenth Claim for Relief: punitive damages; (11) Sixteenth Claim for Relief: injunctive relief; (12) Seventeenth Claim for Relief: breach of fiduciary duty; and (13) Eighteenth Claim for Relief: breach of promissory note. However, these causes of action fail to state a claim as a matter of law and should thus be dismissed.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. In early February, 2000, Frank Davis was approached by Jae Forschen, a business acquaintance that Mr. Davis had been introduced to a few months earlier. Mr. Forschen asked Mr. Davis to do him a "favor" by executing a Promissory Note Agreement in the amount of $175,000. (Davis Aff. ¶ 2; Forschen Aff. ¶ 2).

2. Mr. Forschen told Mr. Davis that he needed to perform the transaction to demonstrate some financial activity. Mr. Forschen had difficulty explaining to Mr. Davis the exact purpose for the transaction. (Davis Aff. ¶ 2).

3. Mr. Davis told Mr. Forschen that he was willing to do Mr. Forschen a favor, but that Mr. Davis was not willing to promise to pay $175,000. (Davis Aff. ¶ 3).

4. Mr. Forschen assured Mr. Davis that the transaction was simply paperwork and that Mr. Forschen would sign a similar promissory note transferring the obligation to himself, to be paid in the same amount and on the same terms. (Davis Aff. ¶ 3; Forschen Aff. ¶ 3).

5. Based on these assurances, Mr. Davis signed the Promissory Note Agreement, attached as "Exhibit A," and received from the Michelon Family Trust in return a Promissory Note Agreement signed by Mr. Forschen, attached as "Exhibit B." Mr. Davis and Mr. Forschen signed the notes in each other's presence. (Davis Aff. ¶ 4).

6. In executing the promissory notes, Mr. Forschen and Mr. Davis understood that no money would change hands and that the transaction was merely a paper transaction. (Davis Aff. ¶ 5).

7. In harmony with this understanding, Mr. Davis never received any money from the Michelon Family Trust. (Davis Aff. ¶ 5; Forschen Aff. ¶¶ 5-6).

8. Further, Mr. Davis never received any money from Jae Forschen, or any other source related to Mr. Forschen. Id.

9. Mr. Davis received no other form of consideration or benefit from the transaction of any nature whatsoever, nor was the transaction designed or intended to benefit him in any way. Id.

10. Mr. Davis viewed the transaction as a harmless exercise performed for the sole

purpose of assisting a business acquaintance. (Davis Aff. ¶ 5).

11. While the promissory notes made reference to the Michelon Family Trust, Mr. Davis had little additional knowledge of the trust or any other transactions pertaining to it. With the exception of the promissory notes, and some fruitless discussions with Mr. Forschen regarding a potential business loan of which the Michelon Family Trust potentially could have been involved, Mr. Davis had no other business dealings, directly or indirectly, with the Michelon Family Trust. (Davis Aff. ¶ 6).

12. In the summer of 2000, Mr. Davis was contacted by Linda Michelon and asked about monies Mr. Forschen was supposedly handling on the trust's behalf. During their communications Mr. Davis never represented that Ms. Michelon's investment was doing well, nor did he have any knowledge upon which to base such an assertion. (Davis Aff. ¶ 7).

13. At all relevant times to this matter, Mr. Davis had no knowledge of any scheme to defraud the Michelon Family Trust or any other entity, and he had no intent to participate in a scheme to defraud or any other wrongful or illegal activity. (Davis Aff. ¶ 8; see also Forschen Aff. ¶ 7).

## ARGUMENT

### I. SUMMARY JUDGMENT IS APPROPRIATE AS A MATTER OF LAW WHERE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

Summary judgment is appropriate where there are no genuine issues of material fact and the movant demonstrates entitlement to judgment as a matter of law. Utah R. Civ. P. 56(c). Only

admissible evidence is to be considered in reviewing a motion for summary judgment or any opposition thereto. Treloggan v. Treloggan, 699 P.2d 747 (Utah 1985). A party opposing a motion for summary judgment has an affirmative obligation to offer specific evidence showing that there is a genuine issue of material fact for trial and/or some evidence in support of each of the essential elements of his claim. Rule 56(c) and (e); Thayne v. Beneficial Utah, Inc., 874 P.2d 120, 124-25 (Utah 1994); Jensen v. IHC Hospitals, Inc., 944 P.2d 327, 339-340 (Utah 1997).

## II. PLAINTIFFS CANNOT ESTABLISH THE REQUISITE ELEMENTS OF EACH OF THEIR CAUSES OF ACTIONS AGAINST DEFENDANTS

### A. Aider and Abetter Liability under Federal or State Law (Second and Fourth Claims for Relief, Respectively)

Plaintiffs allege in the Complaint that Defendants had actual knowledge of material misrepresentations and omissions made to Plaintiffs, that Defendants substantially participated in and assisted in fraud, and that Defendants had knowledge of a scheme to defraud and their role in furtherance of the scheme to defraud. These claims are false. In his accompanying affidavit, Mr. Davis states that he did not conspire to defraud anyone through their his brief dealings with Mr. Forschen. (Davis Aff. ¶ 8; Forschen Aff. ¶ 7). Likewise, Mr. Davis testifies that he had no knowledge of any scheme to defraud or intent to participate in such a scheme. (Davis Aff. ¶ 8). Defendants have no evidence to the contrary. Furthermore, Defendants cannot demonstrate that Mr. Davis participated in any unlawful activity. Hence, Plaintiffs' claims against Defendants for aider and abetter liability under federal and state law fail as a matter of law.

**B. Plaintiffs Cannot Establish the Requisite Elements for a Federal/civil RICO Claim (Fifth Claim for Relief)**

The elements of a RICO violation are: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002) (citations omitted).

First, Defendants were not involved in a pattern of racketeering activity. A pattern of racketeering activity "requires at least two acts of racketeering activity" within "ten years" of each other. 18 U.S.C. § 1961(5). In interpreting this requirement, courts have held that " a RICO . . . 'pattern' requires planned, ongoing, continuing crime and the threat of continuing criminal conduct, as opposed to sporadic, isolated criminal episodes or events." Cook v. Zions First Nat'l Bank, 645 F. Supp. 423, 425-26 (D. Utah 1986). Mr. Davis's actions were isolated and do not pose a threat of continuing criminal conduct. As such, there is no pattern of activity on which to establish a RICO violation.

Additionally, Defendants have not committed any of the requisite crimes for a RICO violation. Plaintiffs' complaint only accuses Mr. Davis of participation in fraud in association with the RICO claim. The only two types of fraud recognized as giving rise to a federal RICO violation are wire fraud and mail fraud. See 18 U.S.C. § 1961. Wire fraud requires "a scheme to defraud and an interstate telephone call made in furtherance of the scheme." United States v. Wise, 553 F.2d 1173, 1174 (8th Cir. 1977) (citations omitted). While Mr. Davis spoke with Ms. Michelon via phone, Plaintiffs cannot establish, as set forth below, that Mr. Davis was engaged

in a scheme to defraud. As a result, Mr. Davis cannot be guilty of wire fraud. Likewise, because mail fraud also requires participation in a scheme to defraud, Mr. Davis cannot be guilty of mail fraud. See 18 U.S.C. § 1341; see also Pereira v. United States, 347 US 1, 8 (1954) (establishing the elements for mail fraud).

Because Mr. Davis was not involved in a pattern of racketeering activity, or any acts qualifying as racketeering activity as defined by statute, Defendants cannot be liable, as a matter of law, for a RICO violation.

### C. Plaintiffs Cannot Establish the Requisite Elements of Conspiracy to Defraud (Seventh Claim for Relief)

"To prove civil conspiracy, five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" Alta Indus. v. Hurst, 846 P.2d 1282, 1290 n.17 (Utah 1993) (citations omitted). "A conspiracy to defraud is fraud committed by two or more persons who share an intent to defraud another." DeBry v. Cascade Enters., 879 P.2d 1353, 1359 (Utah 1994) (citations omitted).

Plaintiffs cannot produce any evidence demonstrating a shared objective by Mr. Davis and Mr. Forschen to commit fraud. In fact, both Mr. Davis and Mr. Forschen testify that they did not conspire to defraud anyone through their brief dealings. (Davis Aff. ¶ 8; Forschen Aff. ¶ 7). Likewise, Mr. Davis testifies that he had no knowledge of any scheme to defraud or intent to participate in such a scheme. (Davis Aff. ¶ 8).

Furthermore, "Conspiracy to defraud requires proof of the underlying fraud," see Gildea v. Guardian Title Co., 970 P.2d 1265, 1271 (Utah 1998), and Plaintiffs cannot establish that Mr. Davis committed fraud. "Fraud is 'a false representation of an existing material fact made knowingly or recklessly for the purpose of inducing reliance thereon, upon which there was reliance to the innocent party's detriment.'" DeBry v. Cascade Enters., 879 P.2d 1353, 1358 (Utah 1994) (citations omitted). Mr. Davis made no false representation to Plaintiffs in that he understood that his obligation was transferred to Mr. Forschen and that he would not owe Plaintiffs any money as a result of the transaction. Likewise, Mr. Davis did not intend for the Plaintiffs to rely on his promise to pay because the obligation was transferred to Mr. Forschen. Accordingly, Mr. Davis cannot be guilty of fraud and, therefore, cannot be guilty conspiracy to defraud.

Because Plaintiffs cannot establish a shared intent or meeting of the minds between Mr. Forschen and Mr. Davis or establish Mr. Davis's participation in the alleged fraud, Plaintiffs' claim of conspiracy to defraud against Defendants fails as a matter of law.

**D. Plaintiffs Cannot Establish the Requisite Elements of Negligent Misrepresentation (Eighth Claim for Relief)**

"A party injured by reasonable reliance upon a second party's negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." Price-

Orem Inv. Co. v. Rollins, Brown & Gunnell, 713 P.2d 55, 59 (Utah 1986) (citations omitted).

Plaintiffs' claim fails on every element. First, because Mr. Davis's transaction was merely a paper transaction, with him receiving no consideration as a result, Mr. Davis did not have pecuniary interest. Second, Mr. Davis was not in a superior position to know material facts associated with the use of Plaintiffs' trust money. Mr. Davis was merely a business associate of Mr. Forschen and had little knowledge of Mr. Forschen's financial dealings or information regarding the Michelon Family Trust. (Davis Aff. ¶ 6). Third, Mr. Davis did not reasonably foresee reliance on his execution of the promissory note because the transfer of the obligation to Mr. Forschen inherent in the transaction. Fourth, Mr. Davis made no representations to Plaintiffs. Accordingly, Plaintiffs' claim for negligent misrepresentation against Defendants fails as a matter of law.

**E. Plaintiffs Cannot Establish the Requisite Elements of Conversion (Eleventh Claim for Relief)**

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." Allred v. Hinkley, 328 P.2d 726, 728 (Utah 1958). Conversion requires "an intent to exercise dominion or control over goods inconsistent with the owner's rights." Id. Mr. Davis did not intend to, and did not in actuality, exercise dominion or control over money from the Michelon Family Trust. Further, he never received any chattel or consideration from said trust. Defendants thus cannot be liable for conversion as a matter of law.

### F. Plaintiffs Cannot Establish the Requisite Elements of Money Had and Received (Twelfth Claim for Relief)

Plaintiffs allege in the Compliant that Mr. Davis obtained money belonging to Plaintiffs through illegal acts and without consideration. However, Mr. Davis never received any money belonging to Plaintiffs (Davis Aff. ¶ 5; Forschen Aff. ¶¶ 5-6) and Plaintiffs cannot establish any illegal conduct performed by Mr. Davis. According, Plaintiffs' claim for money had and received fails as a matter of law.

### G. Plaintiffs Cannot Establish the Requisite Elements of Alter Ego Liability (Thirteenth Claim for Relief)

Plaintiffs' alter ego liability claim for relief fails because alter ego is a theory, not a cause of action. The alter ego theory is the same as piercing the corporate veil.[1] In Richardson v. Matador Steak House, 948 P.2d 347, 348 n.1 (Utah App. 1997), the court held that, "There is no claim for relief known as 'piercing the corporate veil.' Piercing the corporate veil has to do with making persons liable who otherwise would be shielded from personal liability because of the existence of a corporation. It therefore merely determines who may be sued and does not in itself

---

[1] In Ringwood v. Foreign Auto Works, 786 P.2d 1350, 1359 (Utah App. 1990), the court explained:

> The corporate form protects shareholders from personal liability and will be **pierced** by the courts with great reluctance and caution. [Citation omitted]. In order to disregard the corporate entity,
>
>> two circumstances must be shown: (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the **alter-ego** of one or a few individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity.

(Emphasis added) (citation omitted).

constitute a distinct cause of action."

Further, Plaintiffs allege in the Complaint that Defendants had effective and actual control over World Contractual Services and the various trusts and disregarded legal structures associated with these entities for their own profit. Plaintiffs also allege that Defendants failed to maintain separate accounts. However, Mr. Davis had little knowledge of the trust or any other transactions pertaining to it (see Davis Aff. ¶ 6), had no control at any time over trust money or property (see Davis Aff. ¶ 5; Forschen Aff. ¶¶ 5-6), and had only limited interactions with Mr. Forschen. As such, Defendants were not alter egos of Mr. Forschen or any other named defendants and cannot be liable under alter ego liability as a matter of law.

### H. Plaintiffs Cannot Establish the Requisite Elements of Breach of Fiduciary Duty (Seventeenth Claim for Relief)

Plaintiffs cannot establish the existence of a fiduciary duty between themselves and Defendants because Mr. Davis had little interaction with the trust and was never in possession of or had control over any of the trust's assets. As such, their claim for breach of that duty fails as a matter of law.

### I. Plaintiffs Cannot Establish the Requisite Elements of Breach of Promissory Note (Eighteenth Claim for Relief)

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." Campbell, Maack & Sessions v. Debry, 2001 UT App 397, ¶ 21 (citation omitted).

Because Mr. Davis received no consideration for his execution of the Promissory Note,

the contract is not valid. See A.M. Castle & Co. v. Bagley, 467 P.2d 408, 409 (Utah 1970) (except in cases of antecedent debt, failure of consideration defeats a contract). Because there is no valid contract, there can be no breach. Accordingly, Plaintiffs' claim for breach of Promissory Note fails as a matter of law.

**J. Because Plaintiffs Cannot Establish Any Causes of Action Against Defendants, They Are Not Entitled to a Constructive Trust (Fourteenth Claim for Relief), Punitive Damages (Fifteenth Claim for Relief), or an Injunctive Relief (Sixteenth Claim for Relief)**

Plaintiffs have failed to establish the elements of every cause of action against Defendants. Further, their claim for constructive trust fails because Defendants have no funds of Plaintiffs in which to place in a constructive trust. Also, punitive damages is not an independent cause of action.[2] Finally, because Defendants have no funds of Plaintiffs, there is nothing to enjoin Defendants from doing. Thus, these last three causes of action fail as a matter of law.

## CONCLUSION

Based on the foregoing, the Court should grant Defendants' Motion for Summary Judgment and dismiss all claims against Defendants.

---

[2] Further, punitive damages is not its own cause of action. "[P]unitive damages cannot be pleaded as an independent cause of action." Norman v. Arnold, 2002 UT 81¶ 8, n. 2; see also, Waddoups v. Amalgamated Sugar Co., 2002 UT 69, ¶ 8, n. 1 (holding that "because punitive damages are a remedy and not an independent cause of action, we do not analyze it as a separate cause of action.").

DATED this 28 day of January, 2004.

HILL, JOHNSON & SCHMUTZ L.C.

Stephen Quesenberry
J. Bryan Quesenberry
Attorneys for Defendants

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that on the 29 day of January, 2004, they caused a true and correct copy of the foregoing memorandum to be delivered to the following:

David M. Wahlquist
Kirton & McConkie
1800 Eagle Gate Tower
60 East South Temple
PO Box 45120
Salt Lake City, Utah 84145-0120

David J. Orr
5449 Suntree Avenue
West Valley, Utah 84120

Sent Via:
____ Hand -Delivery
__/__ Facsimile
__✓__ Mailed (postage prepaid)