FILED
-6 JUL 04 PM 3:06
DISTRICT OF UTAH
BY:_____

**STEPHEN QUESENBERRY (8073)**
**J. BRYAN QUESENBERRY (9156)**
**HILL, JOHNSON & SCHMUTZ, L.C.**
Jamestown Square
3319 North University Avenue
Provo, Utah 84604
Telephone (801) 375-6600

**Attorneys for Defendants Frank L. Davis, Harvest Marketing, LLC, and**
**First Harvest, LLC**

IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JENNIFER STEIMKE, as trustee of the ODETTE GRAHAM TRUST, sole beneficiary of the MICHELON FAMILY TRUST, and sole devisee and representative of the ESTATE OF LYNDA STEIMKE MICHELON, <br><br> Plaintiff, <br><br> JAE FORSCHEN, DAVID J. ORR, individually and dba WORLD CONTRACTUAL SERVICES, HARVEST MARKETING, L.L.C., FIRST HARVEST MARKETING, L.L.C., FRANK L. DAVIS, and JOHN DOES 1 through 10, <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT** <br><br><br><br><br><br><br><br><br> Case No. 2:03CV00487 DAK <br><br> Judge Dale A. Kimball |

Defendants Frank L. Davis, Harvest Marketing, L.L.C., and First Harvest, L.L.C.

("Defendants"), by and through counsel, hereby submit this Memorandum in Support of Second

Motion for Summary Judgment.



## INTRODUCTION

Plaintiffs have asserted thirteen causes of action against Defendants: (1) Second Claim for Relief: aider and abetter liability – federal law; (2) Fourth Claim for Relief: aider and abetter liability – state law; (3) Fifth Claim for Relief: federal/civil RICO;[1] (4) Seventh Claim for Relief: conspiracy to defraud; (5) Eighth Claim for Relief: negligent misrepresentation; (6) Eleventh Claim for Relief: conversion; (7) Twelfth Claim for Relief: money had and received; (8) Thirteenth Claim for Relief: alter ego liability; (9) Fourteenth Claim for Relief: constructive trust; (10) Fifteenth Claim for Relief: punitive damages; (11) Sixteenth Claim for Relief: injunctive relief; (12) Seventeenth Claim for Relief: breach of fiduciary duty; and (13) Eighteenth Claim for Relief: breach of promissory note.  However, based on the deposition of Jae Forschen, the accompanying Second Affidavit of Frank Davis, and the previously-filed Affidavit of J. Forschen, these causes of action are without merit and should be dismissed as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant Jae Forschen invested money from the Michelon Family Trust ("Trust") in a high-yield project with an organization back East.  (See, Depo. of J. Forschen, 55:11-17; 71: 7-19; 75:3-13 attached as Exhibit C to Second Aff. of F. Davis).

2. However, when the organization back East failed to obtained its promised high-returns, it offered Forschen another investment opportunity – a loan program – which needed an

---

[1] Plaintiffs have agreed to dismiss this claim against Defendants.  The parties are thus in the middle of signing a stipulation motion and order dismiss Plaintiffs' RICO claims against Defendants.

existing company that had accounts receivable to obtain a business loan on behalf of the Trust. Id.

3.  The back-East organization would use the loan proceeds to pay of the Trust's initial investment and then invest the rest on behalf of the Trust into a debt elimination program that promised a high-yield return.  Id.

4.  Forschen was co-trust officer of the Trust and had the authority to make investments on its behalf.  Id. at 132:5-7.

5.  In early February, 2000, Forschen approached Defendant Frank Davis and asked Davis to do him a "favor" by executing a Promissory Note Agreement in the amount of $175,000 for Forschen's loan program with the back-East organization which expected to soon thereafter obtain funds for Forschen.  (See, Second Aff. of F. Davis, ¶3; Depo of J. Forschen, 75:17-19).

6.  Davis told Forschen that he was willing to do Forschen a favor, but that Davis was not willing to promise to pay $175,000.  (See, Second Aff. of F. Davis, ¶ 4).

7.  Forschen assured Davis that the transaction was simply paperwork and that Forschen would sign a similar promissory note transferring the obligation to himself, to be paid in the same amount and on the same terms.  (See, Second Aff. of F. Davis,  ¶ 5; Aff. of J. Forschen, ¶ 5).

8.  Based on these assurances, Davis signed a Promissory Note Agreement to the Trust on or about February 15, 2000[2] (the "Davis Note").  (See, Exhibit A attached to the Second Aff. of

---

[2] Although the Davis Note is dated November 15, 1999, Forschen back-dated it from February 15, 2000. (See, Depo. of J. Forschen, 141:24-142:2 attached as Exhibit C to the Second Aff. of F. Davis).

F. Davis).

9. Forschen was the trust officer of the Trust at the time he had Davis sign the Davis Note to the Trust. (See, Depo. of J. Forschen, 183:1-5 attached as Exhibit C to the Second Aff. of F. Davis).

10. In return, Forschen gave Davis a Promissory Note Agreement on or about February 15, 2000 (the "Forschen Note"). (See, Exhibit B attached to the Second Aff. of F. Davis).

11. Forschen personally gave the Forschen Note to Davis to cover any liability to the Trust for the Davis Note. (See, Depo. of J. Forschen, 147:14 - 148:3 attached as Exhibit C to the Second Aff. of F. Davis).

12. Forschen was the trust officer for the Trust at the time he signed the Forschen Note. Id. at 185:12-15.

13. In executing these promissory notes, Forschen and Davis understood that no money would change hands and that the transaction was merely a paper transaction. (See, Second Aff. of F. Davis, ¶ 8).

14. Forschen's intent was for the Forschen Note to replace the Davis Note. (See, Depo. of J. Forschen, 187:9-14 attached as Exhibit C to the Second Aff. of F. Davis).

15. Neither Davis nor his entities ever received any money from Forschen, the back-East organization, the Trust, or from the transaction in question. Id. at 183:24-184:14.

16. Davis and his entities had nothing to do with the transaction where Forschen sent

money back East; in fact, Davis "was not even on the scene when that was happening." (See, Depo of. J. Forschen, 185:1-2 attached as Exhibit C to the Aff. of F. Davis).

     17. Davis received no other form of consideration or benefit whatsoever from the transaction in question or from the promissory notes in question. (See, Second Aff. of F. Davis, ¶ 11).

     18. The Davis Note and the transaction in question were Forschen's idea; he approached Davis about it. (See, Depo. of J. Forschen, 187:23-188:11 attached as Exhibit C to the Aff. of F. Davis).

     19. While the promissory notes made reference to the Trust, Davis had little additional knowledge of the Trust or any other transactions pertaining to it. (See, Second Aff. of F. Davis, ¶ 13).

     20. With the exception of the promissory notes and some fruitless discussions with Forschen regarding a potential business loan of which the Trust potentially could have been involved, Davis had no other business dealings, directly or indirectly, with the Trust. Id.

     21. At all relevant times to this matter, Davis had no knowledge of any scheme to defraud the Trust or any other entity, and he had no intent to participate in a scheme to defraud, or any other wrongful or illegal activity. Id. at ¶ 14.

     22. Davis never made any false representations to Forschen or any other agent or representative of the Trust. Id. at ¶ 15.

23. Davis has never made any false representations to any of the Plaintiffs. Id.

24. Davis has none of Plaintiffs' money and never received any of Plaintiffs' money. Id. at ¶ 16.

## ARGUMENT

**I.     SUMMARY JUDGMENT IS APPROPRIATE AS A MATTER OF LAW WHERE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE**

Summary judgment is appropriate where there are no genuine issues of material fact and the movant demonstrates entitlement to judgment as a matter of law. Utah R. Civ. P. 56(c). Only admissible evidence is to be considered in reviewing a motion for summary judgment or any opposition thereto. Treloggan v. Treloggan, 699 P.2d 747 (Utah 1985). A party opposing a motion for summary judgment has an affirmative obligation to offer specific evidence showing that there is a genuine issue of material fact for trial and/or some evidence in support of each of the essential elements of his claim. Rule 56(c) and (e); Thayne v. Beneficial Utah, Inc., 874 P.2d 120, 124-25 (Utah 1994); Jensen v. IHC Hospitals, Inc., 944 P.2d 327, 339-340 (Utah 1997).

**II.    PLAINTIFFS CANNOT ESTABLISH THE REQUISITE ELEMENTS OF EACH OF THEIR CAUSES OF ACTIONS AGAINST DEFENDANTS**

**A.     Aider and Abetter Liability under Federal or State Law (Second and Fourth Claims for Relief, Respectively)**

Plaintiffs allege that Defendants had actual knowledge of material misrepresentations and omissions made to Plaintiffs, that Defendants substantially participated in and assisted in fraud, and that Defendants had knowledge of a scheme to defraud and their role in furtherance of the

6

scheme to defraud.  These claims are false.  Defendants' only involvement in the transaction in question was the Davis Note that Davis gave to the Trust.  Davis had no knowledge of any scheme to defraud the Trust.  In fact, Forschen testified in his deposition that he didn't bring Davis into the transaction until he had already transferred the Trust funds to the organization back-East.  Defendants have no evidence to the contrary.

Further, Defendants cannot demonstrate that Davis participated in any unlawful activity. Hence, Plaintiffs' claims against Defendants for aider and abetter liability under federal and state law fail as a matter of law.

**B.      Plaintiffs Cannot Establish the Requisite Elements of Conspiracy to Defraud (Seventh Claim for Relief)**

"To prove civil conspiracy, five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" Alta Indus. v. Hurst, 846 P.2d 1282, 1290 n.17 (Utah 1993) (citations omitted).  "A conspiracy to defraud is fraud committed by two or more persons who share an intent to defraud another." DeBry v. Cascade Enters., 879 P.2d 1353, 1359 (Utah 1994) (citations omitted).

Plaintiffs cannot produce any evidence that Davis defrauded Plaintiffs.  "Conspiracy to defraud requires proof of the underlying fraud." Gildea v. Guardian Title Co., 970 P.2d 1265, 1271 (Utah 1998).  "Fraud is 'a false representation of an existing material fact made knowingly or recklessly for the purpose of inducing reliance thereon, upon which there was reliance to the

innocent party's detriment.'" <u>DeBry</u>, 879 P.2d at 1358 (citations omitted).  There is no evidence that Davis made any false representations of material facts to Plaintiffs.  Further, Davis made no false representations of material facts to Forschen or any other agent or representative of the Trust.  Accordingly, because Davis committed no fraud against Plaintiff, Defendants could not have conspired to defraud.

Because Plaintiffs cannot establish the underlying fraud, Plaintiffs' claim of conspiracy to defraud against Defendants fails as a matter of law.

**C.    Plaintiffs Cannot Establish the Requisite Elements of Negligent Misrepresentation (Eighth Claim for Relief), Which Is Also Barred by the Economic Loss Rule**

"A party injured by reasonable reliance upon a second party's negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." <u>Price-Orem Inv. Co. v. Rollins, Brown & Gunnell</u>, 713 P.2d 55, 59 (Utah 1986) (citations omitted). Plaintiffs cannot establish these requirements.

First, because Davis's transaction was merely a paper transaction with him receiving no consideration as a result, Davis did not have pecuniary interest.

Second, Davis was not in a superior position to know material facts associated with the use of Plaintiffs' trust money.  Forschen was the trust officer of the Trust at the time, who

approached Davis and enlisted Davis' help.  Davis had little knowledge of Forschen's financial

dealings or information regarding the Trust.  Further, Forschen had already transferred the money

in question to the back-East organization before Davis even arrived on the scene.

Third, Davis made no representations to Plaintiffs.  There is no evidence that Davis made

any false representations of material facts to Plaintiffs.   Further, Davis made no false

representations of material facts to Forschen or any other agent or representative of the Trust.

Finally, the economic loss rule bars Plaintiffs' negligence claim.  The economic loss rule

bars all economic losses under a theory of non-intentional tort. <u>Am. Towers Owners Ass'n v.</u>

<u>CCI Mech.</u>, 930 P.2d 1182, 1189 (Utah 1996) (attached hereto).  In fact, the United States

Supreme Court has held that, "It is clear that the majority of courts do not allow economic loss

recovery in tort, but that economic loss is recoverable in contract." <u>East River Steamship Corp.</u>

<u>v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 866-75 (1986).  "[T]he economic loss rule holds

that 'economic damages are not recoverable in negligence absent physical property damage or

bodily injury.'" <u>Grynberg v. Questar Pipeline Company</u>, 2003 UT 8, ¶ 41.  In <u>Hermansen v.</u>

<u>Tasulis</u>, 48 P.3d 235, 239 (Utah 2002), the court explained:

> The economic loss rule is a judicially created doctrine that marks the fundamental
> boundary between contract law, which protects expectancy interests created through
> agreement between the parties, and tort law, which protects individuals and their property
> from physical harm by imposing a duty of reasonable care.

(Citations omitted).  Because Plaintiffs seek damages based on their negligent misrepresentation

cause of action, such is an economic loss that Plaintiffs must seek through the contract at issue

herein (i.e. Davis Note).  Accordingly, their negligent misrepresentation claim is barred.

Accordingly, Plaintiffs' claim for negligent misrepresentation against Defendants fails as a matter of law.

**D.      Plaintiffs Cannot Establish the Requisite Elements of Conversion (Eleventh Claim for Relief)**

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." Allred v. Hinkley, 328 P.2d 726, 728 (Utah 1958). Conversion requires "an intent to exercise dominion or control over goods inconsistent with the owner's rights." Id.  Davis never exercised dominion or control over the Trust's money because it went from the Trust's bank to the back-East organization *via* Forschen before Forschen ever brought Davis into the transaction in question. Further, Davis never received any of the money in question; it went straight to the back-East organization.  It never went through Davis' hands.  Defendants thus cannot be liable for conversion as a matter of law.

**E.      Plaintiffs Cannot Establish the Requisite Elements of Money Had and Received (Twelfth Claim for Relief)**

Plaintiffs allege in the Compliant that Davis obtained money belonging to Plaintiffs through illegal acts and without consideration.  However, as stated above, Davis never received any money belonging to Plaintiffs.  The money in question was transferred from the Trust's bank account to the back-East organization by Forschen.  It was transferred before Davis was even

10

involved with the transaction.  According, Plaintiffs' claim for money had and received fails as a matter of law.

### F.    Plaintiffs Cannot Establish the Requisite Elements of Alter Ego Liability (Thirteenth Claim for Relief)

Plaintiffs' alter ego liability claim for relief fails because alter ego is a theory, not a cause of action.  The alter ego theory is the same as piercing the corporate veil.[3]  In <u>Richardson v. Matador Steak House</u>, 948 P.2d 347, 348 n.1 (Utah App. 1997), the court held that, "There is no claim for relief known as 'piercing the corporate veil.'  Piercing the corporate veil has to do with making persons liable who otherwise would be shielded from personal liability because of the existence of a corporation. It therefore merely determines who may be sued and does not in itself constitute a distinct cause of action."

Further, Plaintiffs allege in the Complaint that Defendants had effective and actual control over World Contractual Services and the various trusts and disregarded legal structures associated with these entities for their own profit.  However, Davis had little knowledge of the Trust or any other transactions between it and the back-East organization, had no control at any

---

[3] In <u>Ringwood v. Foreign Auto Works</u>, 786 P.2d 1350, 1359 (Utah App. 1990), the court explained:

The corporate form protects shareholders from personal liability and will be **pierced** by the courts with great reluctance and caution. [Citation omitted].  In order to disregard the corporate entity,

two circumstances must be shown: (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the **alter-ego** of one or a few individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity.

(Emphasis added) (citation omitted).

11

time over the Trust's money or property.  As such, Defendants were not alter egos of Forschen or

any other named defendants and cannot be liable under alter ego liability as a matter of law.

> **G.    Plaintiffs Cannot Establish the Requisite Elements of Breach of Fiduciary
>         Duty (Seventeenth Claim for Relief)**

Plaintiffs cannot establish the existence of a fiduciary duty between themselves and

Defendants because Davis was never a principal, agent or representative of the Trust.  Forschen

was the trust officer at all relevant times herein.  Davis was never in possession of or had control

over any of the Trust's assets.  As such, Plaintiffs' claim for breach of fiduciary duty fails as a

matter of law.

> **H.    Plaintiffs Cannot Establish the Requisite Elements of Breach of Promissory
>         Note (Eighteenth Claim for Relief)**

Plaintiffs claim Defendants breached the Davis Note.  "The elements of a prima facie

case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3)

breach of the contract by the other party, and (4) damages."  Campbell, Maack & Sessions v.

Debry, 2001 UT App 397, ¶ 21 (citation omitted).

Because Davis received no consideration for his execution of the Promissory Note, the

contract was never valid.  See A.M. Castle & Co. v. Bagley, 467 P.2d 408, 409 (Utah 1970)

(except in cases of antecedent debt, failure of consideration defeats a contract).  Because there is

no valid contract, there can be no breach.

Further, Plaintiffs never performed because they never tendered to Davis any of the funds

in question.

Accordingly, Plaintiffs' claim for breach of Promissory Note fails as a matter of law.

I.     **Plaintiffs' Claims for Constructive Trust (Fourteenth Claim for Relief), Punitive Damages (Fifteenth Claim for Relief), and Injunctive Relief (Sixteenth Claim for Relief) Fail as a Matter of Law**

Plaintiffs' last three claims against Defendants are easily disposed of.  First, their claim for constructive trust fails because Defendants have no funds of Plaintiffs in which to place in a constructive trust.

Also, their claim for punitive damages is not an independent cause of action.  "[P]unitive damages cannot be pleaded as an independent cause of action." Norman v. Arnold, 2002 UT 81¶ 8, n. 2; see also, Waddoups v. Amalgamated Sugar Co., 2002 UT 69, ¶ 8, n. 1 (holding that "because punitive damages are a remedy and not an independent cause of action, we do not analyze it as a separate cause of action.").

Finally, because Defendants have no funds of Plaintiffs, there is nothing to enjoin Defendants from doing.

Thus, these last three causes of action fail as a matter of law.

## CONCLUSION

Based on the foregoing, the Court should grant Defendants' Second Motion for Summary Judgment and dismiss all claims against Defendants.

DATED this _____ day of July, 2004.

HILL, JOHNSON & SCHMUTZ L.C.

Stephen Quesenberry
J. Bryan Quesenberry
Attorneys for Defendants

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on the ____ day of July, 2004, they caused a true and

correct copy of the foregoing memorandum to be delivered to the following:

David M. Wahlquist
Kirton & McConkie
1800 Eagle Gate Tower
60 East South Temple
PO Box 45120
Salt Lake City, Utah 84145-0120

David J. Orr
5449 Suntree Avenue
West Valley, Utah 84120

Sent Via:
_____ Hand -Delivery
_____ Facsimile
___✓___ Mailed (postage prepaid)

14