FILED
2005 APR -6 P 1:39
BY: DEPUTY CLERK

**STEPHEN QUESENBERRY (8073)**
**J. BRYAN QUESENBERRY (9156)**
**HILL, JOHNSON & SCHMUTZ, L.C.**
Jamestown Square
3319 North University Avenue
Provo, Utah 84604
Telephone (801) 375-6600

**Attorneys for Defendants Frank L. Davis, Harvest Marketing, LLC, and First Harvest, LLC**

IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JENNIFER STEIMKE, as trustee of the ODETTE GRAHAM TRUST, sole beneficiary of the MICHELON FAMILY TRUST, and sole devisee and representative of the ESTATE OF LYNDA STEIMKE MICHELON,<br><br>Plaintiff,<br><br>JAE FORSCHEN, DAVID J. ORR, individually and dba WORLD CONTRACTUAL SERVICES, HARVEST MARKETING, L.L.C., FIRST HARVEST MARKETING, L.L.C., FRANK L. DAVIS, and JOHN DOES 1 through 10,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF THIRD MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:03CV00487 DAK<br><br>Judge Dale A. Kimball |

Defendants Frank L. Davis, Harvest Marketing, L.L.C., and First Harvest, L.L.C. ("Defendants"), by and through counsel, hereby submit this Memorandum in Support of Second



Motion for Summary Judgment.

## INTRODUCTION

Plaintiffs assert eight causes of action against Defendants: (1) Second Claim for Relief: aider and abetter liability – federal law; (2) Fourth Claim for Relief: aider and abetter liability – state law; (3) Seventh Claim for Relief: conspiracy to defraud; (4) Eighth Claim for Relief: negligent misrepresentation; (5) Eleventh Claim for Relief: conversion; (6) Twelfth Claim for Relief: money had and received; (7) Seventeenth Claim for Relief: breach of fiduciary duty; and (8) Eighteenth Claim for Relief: breach of promissory note.[1] However, based on the deposition of Jae Forschen, the previously-filed *Second Affidavit of Frank Davis*, and the previously-filed *Affidavit of Jae Forschen*, these causes of action are without merit and should be dismissed as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant Jae Forschen invested money from the Michelon Family Trust ("Trust") in a high-yield project with an organization back East. (See, Depo. of J. Forschen, 55:11-17; 71: 7-19; 75:3-13 attached as Exhibit C to Second Aff. of F. Davis).

2. However, when the organization back East failed to obtained its promised high-returns, it offered Forschen another investment opportunity – a loan program – which needed an existing

---

[1] Plaintiffs have dismissed their Fifth Claim for Relief: federal/civil RICO. Also, the Court has previously dismissed Plaintiffs' Thirteenth Claim for Relief: alter ego liability, Fourteenth Claim for Relief: constructive trust, Fifteenth Claim for Relief: punitive damages, and Sixteenth Claim for Relief: injunctive relief.

company that had accounts receivable to obtain a business loan on behalf of the Trust. Id.

3. The back-East organization would use the loan proceeds to pay of the Trust's initial investment and then invest the rest on behalf of the Trust into a debt elimination program that promised a high-yield return. Id.

4. Forschen was co-trust officer of the Trust and had the authority to make investments on its behalf. Id. at 132:5-7.

5. In early February, 2000, Forschen approached Defendant Frank Davis and asked Davis to do him a "favor" by executing a Promissory Note Agreement in the amount of $175,000 for Forschen's loan program with the back-East organization which expected to soon thereafter obtain funds for Forschen. (See, Second Aff. of F. Davis, ¶3; Depo of J. Forschen, 75:17-19).

6. Davis told Forschen that he was willing to do Forschen a favor, but that Davis was not willing to promise to pay $175,000. (See, Second Aff. of F. Davis, ¶ 4).

7. Forschen assured Davis that the transaction was simply paperwork and that Forschen would sign a similar promissory note transferring the obligation to himself, to be paid in the same amount and on the same terms. (See, Second Aff. of F. Davis, ¶ 5; Aff. of J. Forschen, ¶ 5).

8. Based on these assurances, Davis signed a Promissory Note Agreement to the Trust on or about February 15, 2000[2] (the "Davis Note"). (See, Exhibit A attached to the Second Aff. of F.

---

[2] Although the Davis Note is dated November 15, 1999, Forschen back-dated it from February 15, 2000. (See, Depo. of J. Forschen, 141:24-142:2 attached as Exhibit C to the Second Aff. of F. Davis).

Davis).

9. Forschen was the trust officer of the Trust at the time he had Davis sign the Davis Note to the Trust. (See, Depo. of J. Forschen, 183:1-5 attached as Exhibit C to the Second Aff. of F. Davis).

10. In return, Forschen gave Davis a Promissory Note Agreement on or about February 15, 2000 (the "Forschen Note"). (See, Exhibit B attached to the Second Aff. of F. Davis).

11. Forschen personally gave the Forschen Note to Davis to cover any liability to the Trust for the Davis Note. (See, Depo. of J. Forschen, 147:14 - 148:3 attached as Exhibit C to the Second Aff. of F. Davis).

12. Forschen was the trust officer for the Trust at the time he signed the Forschen Note. Id. at 185:12-15.

13. In executing these promissory notes, Forschen and Davis understood that no money would change hands and that the transaction was merely a paper transaction. (See, Second Aff. of F. Davis, ¶ 8).

14. Forschen's intent was for the Forschen Note to replace the Davis Note. (See, Depo. of J. Forschen, 187:9-14 attached as Exhibit C to the Second Aff. of F. Davis).

15. Neither Davis nor his entities ever received any money from Forschen, the back-East organization, the Trust, or from the transaction in question. Id. at 183:24-184:14.

16. Davis and his entities had nothing to do with the transaction where Forschen sent money

back East; in fact, Davis "was not even on the scene when that was happening." (See, Depo of. J. Forschen, 185:1-2 attached as Exhibit C to the Aff. of F. Davis).

17. Davis received no other form of consideration or benefit whatsoever from the transaction in question or from the promissory notes in question. (See, Second Aff. of F. Davis, ¶ 11).

18. The Davis Note and the transaction in question were Forschen's idea; he approached Davis about it. (See, Depo. of J. Forschen, 187:23-188:11 attached as Exhibit C to the Aff. of F. Davis).

19. While the promissory notes made reference to the Trust, Davis had little additional knowledge of the Trust or any other transactions pertaining to it. (See, Second Aff. of F. Davis, ¶ 13).

20. With the exception of the promissory notes and some fruitless discussions with Forschen regarding a potential business loan of which the Trust potentially could have been involved, Davis had no other business dealings, directly or indirectly, with the Trust. Id.

21. At all relevant times to this matter, Davis had no knowledge of any scheme to defraud the Trust or any other entity, and he had no intent to participate in a scheme to defraud, or any other wrongful or illegal activity. Id. at ¶ 14.

22. Davis never made any false representations to Forschen or any other agent or representative of the Trust. Id. at ¶ 15.

23. Davis has never made any false representations to any of the Plaintiffs. Id.

24. Davis has none of Plaintiffs' money and never received any of Plaintiffs' money. Id. at ¶ 16.

## ARGUMENT

### I. SUMMARY JUDGMENT IS APPROPRIATE AS A MATTER OF LAW WHERE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

Summary judgment is appropriate where there are no genuine issues of material fact and the movant demonstrates entitlement to judgment as a matter of law. Utah R. Civ. P. 56(c). Only admissible evidence is to be considered in reviewing a motion for summary judgment or any opposition thereto. Treloggan v. Treloggan, 699 P.2d 747 (Utah 1985). A party opposing a motion for summary judgment has an affirmative obligation to offer specific evidence showing that there is a genuine issue of material fact for trial and/or some evidence in support of each of the essential elements of his claim. Rule 56(c) and (e); Thayne v. Beneficial Utah, Inc., 874 P.2d 120, 124-25 (Utah 1994); Jensen v. IHC Hospitals, Inc., 944 P.2d 327, 339-340 (Utah 1997).

Plaintiffs' claims fail this standard.

### II. PLAINTIFFS CANNOT ESTABLISH THE REQUISITE ELEMENTS OF THEIR CAUSES OF ACTIONS AGAINST DEFENDANTS

#### A. Aider and Abetter Liability under Federal or State Law (Second and Fourth Claims for Relief, Respectively)

Plaintiffs allege that Defendants had actual knowledge of material misrepresentations and omissions made to Plaintiffs, that Defendants substantially participated in and assisted in fraud, and that Defendants had knowledge of a scheme to defraud. These claims are false. Defendants' only involvement in the transaction in question was the Davis Note that Davis gave to the Trust. Davis had no knowledge of any scheme to defraud the Trust. In fact, Forschen testified in his deposition that he didn't bring Davis into the transaction until he had already transferred the Trust funds to the organization back-East. Defendants have no evidence to the contrary.

Further, Defendants cannot demonstrate that Davis participated in any unlawful activity. Hence, Plaintiffs' claims against Defendants for aider and abetter liability under federal and state law fail as a matter of law.

### B. Plaintiffs Cannot Establish the Requisite Elements of Conspiracy to Defraud (Seventh Claim for Relief)

"To prove civil conspiracy, five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" Alta Indus. v. Hurst, 846 P.2d 1282, 1290 n.17 (Utah 1993) (citations omitted). "A conspiracy to defraud is fraud committed by two or more persons who share an intent to defraud another." DeBry v. Cascade Enters., 879 P.2d 1353, 1359 (Utah 1994) (citations omitted).

Plaintiffs cannot produce any evidence that Davis defrauded Plaintiffs. "Conspiracy to defraud

requires proof of the underlying fraud." Gildea v. Guardian Title Co., 970 P.2d 1265, 1271 (Utah 1998). "Fraud is 'a false representation of an existing material fact made knowingly or recklessly for the purpose of inducing reliance thereon, upon which there was reliance to the innocent party's detriment.'" DeBry, 879 P.2d at 1358 (citations omitted). There is no evidence that Davis made any false representations of material facts to Plaintiffs. Further, Davis made no false representations of material facts to Forschen or any other agent or representative of the Trust. Accordingly, because Davis committed no fraud against Plaintiff, Defendants could not have conspired to defraud.

Because Plaintiffs cannot establish the underlying fraud, Plaintiffs' claim of conspiracy to defraud against Defendants fails as a matter of law.

### C. Plaintiffs Cannot Establish the Requisite Elements of Negligent Misrepresentation (Eighth Claim for Relief), Which Is Also Barred by the Economic Loss Rule

"A party injured by reasonable reliance upon a second party's negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, 713 P.2d 55, 59 (Utah 1986) (citations omitted). Plaintiffs cannot establish these requirements.

First, because Davis's transaction was merely a paper transaction with him receiving no

consideration as a result, Davis did not have pecuniary interest.

Second, Davis was not in a superior position to know material facts associated with the use of Plaintiffs' trust money. Forschen was the trust officer of the Trust at the time, who approached Davis and enlisted Davis' help. Davis had little knowledge of Forschen's financial dealings or information regarding the Trust. Further, Forschen had already transferred the money in question to the back-East organization before Davis even arrived on the scene.

Third, Davis made no representations to Plaintiffs. There is no evidence that Davis made any false representations of material facts to Plaintiffs. Further, Davis made no false representations of material facts to Forschen or any other agent or representative of the Trust.

Finally, the economic loss rule bars Plaintiffs' negligence claim. The economic loss rule bars all economic losses under a theory of non-intentional tort. Am. Towers Owners Ass'n v. CCI Mech., 930 P.2d 1182, 1189 (Utah 1996) (attached hereto). In fact, the United States Supreme Court has held that, "It is clear that the majority of courts do not allow economic loss recovery in tort, but that economic loss is recoverable in contract." East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866-75 (1986). "[T]he economic loss rule holds that 'economic damages are not recoverable in negligence absent physical property damage or bodily injury.'" Grynberg v. Questar Pipeline Company, 2003 UT 8, ¶ 41. In Hermansen v. Tasulis, 48 P.3d 235, 239 (Utah 2002), the court explained:

> The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care.

(Citations omitted). Because Plaintiffs seek damages based on their negligent misrepresentation cause of action, such is an economic loss that Plaintiffs must seek through the contract at issue herein (i.e. Davis Note). Accordingly, their negligent misrepresentation claim is barred.

Accordingly, Plaintiffs' claim for negligent misrepresentation against Defendants fails as a matter of law.

**D. Plaintiffs Cannot Establish the Requisite Elements of Conversion (Eleventh Claim for Relief)**

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." Allred v. Hinkley, 328 P.2d 726, 728 (Utah 1958). Conversion requires "an intent to exercise dominion or control over goods inconsistent with the owner's rights." Id. Davis never exercised dominion or control over the Trust's money because it went from the Trust's bank to the back-East organization *via* Forschen before Forschen ever brought Davis into the transaction in question. Further, Davis never received any of the money in question; it went straight to the back-East organization. It never went through Davis' hands. Defendants thus cannot be liable for conversion as a matter of law.

**E. Plaintiffs Cannot Establish the Requisite Elements of Money Had and Received (Twelfth Claim for Relief)**

Plaintiffs allege in the Compliant that Davis obtained money belonging to Plaintiffs through illegal acts and without consideration. However, as stated above, Davis never received any money belonging to Plaintiffs. The money in question was transferred from the Trust's bank account to the back-East organization by Forschen. It was transferred before Davis was even involved with the transaction. According, Plaintiffs' claim for money had and received fails as a matter of law.

**F. Plaintiffs Cannot Establish the Requisite Elements of Breach of Fiduciary Duty (Seventeenth Claim for Relief)**

Plaintiffs cannot establish the existence of a fiduciary duty between themselves and Defendants because Davis was never a principal, agent or representative of the Trust. Forschen was the trust officer at all relevant times herein. Davis was never in possession of or had control over any of the Trust's assets. As such, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law.

**G. Plaintiffs Cannot Establish the Requisite Elements of Breach of Promissory Note (Eighteenth Claim for Relief)**

Plaintiffs claim Defendants breached the Davis Note. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." Campbell, Maack & Sessions v. Debry, 2001 UT App 397, ¶ 21 (citation omitted).

Because Davis received no consideration for his execution of the Promissory Note, the contract was never valid. See A.M. Castle & Co. v. Bagley, 467 P.2d 408, 409 (Utah 1970) (except in cases

of antecedent debt, failure of consideration defeats a contract). Because there is no valid contract, there can be no breach.

Further, Plaintiffs never performed because they never tendered to Davis any of the funds in question.

Accordingly, Plaintiffs' claim for breach of Promissory Note fails as a matter of law.

## CONCLUSION

Based on the foregoing, the Court should grant Defendants' Third Motion for Summary Judgment and dismiss all remaining claims against Defendants.

DATED this 3 day of April, 2005.

HILL, JOHNSON & SCHMUTZ L.C.

Stephen Quesenberry
J. Bryan Quesenberry
Attorneys for Defendants

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that on the 4 day of April, 2005, they caused a true and correct copy of the foregoing memorandum to be delivered to the following:

David M. Wahlquist
Kirton & McConkie
1800 Eagle Gate Tower
60 East South Temple
PO Box 45120
Salt Lake City, Utah 84145-0120

David J. Orr
5449 Suntree Avenue
West Valley, Utah 84120

Sent Via:
_______ Hand -Delivery
_______ Facsimile
___X___ Mailed (postage prepaid)