David M. Wahlquist (Bar No. 3349)
Daniel J. McDonald (Bar No. 7935)
**KIRTON & McCONKIE**
1800 Eagle Gate Tower
60 East South Temple
P.O. Box 45120
Salt Lake City, UT 84145-0120

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT

## STATE OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| JENNIFER STEIMKE, as trustee of the ODETTE GRAHAM TRUST, sole beneficiary of the MICHELON FAMILY TRUST, and sole devisee and representative of the ESTATE OF LYNDA STEIMKE MICHELON, | : : : : : : | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT.** |
|       Plaintiff, | : : | |
| v. | : : | Case No. 2:03CV-0487 |
| JAE FORSCHEN, DAVID J. ORR, individually and dba WORLD CONTRACTUAL SERVICES, HARVEST MARKETING, L.L.C., FIRST HARVEST, L.L.C., FRANK L. DAVIS, and JOHN DOES 1 through 10, | : : : : : : | Judge Dale A. Kimball |
|       Defendants. | : : : | |

---

Plaintiff Jennifer Steimke, acting on behalf of the Michelon Family Trust ("MFT"),

submits this Reply Memorandum of Points and Authorities in Support of Plaintiff's Cross-

Motion For Summary Judgment.

## RESPONSE TO DAVIS DEFENDANTS' STATEMENT OF ADDITIONAL FACTS

Plaintiff responds to the Davis Defendants' Statement of Additional Facts as follows:

1.      *The Davis Note was made by Defendants Harvest Marketing/First Harvest on behalf of the Plaintiff, Michelon Family Trust (the "Trust").*

RESPONSE:   Plaintiff admits that the Davis Note was made by Defendants Harvest Marketing/First Harvest and Frank Davis.  Plaintiff also admits that the Davis Note was made in favor of MFT.  However, Plaintiff denies that the Davis Note was made "on behalf" of MFT. Rather, it was made on behalf of the Davis Defendants and Forschen who personally sought to benefit from the Davis loan transaction.   The Davis Defendants did not dispute paragraphs 1 through 18 of the Statement of Undisputed Material Facts contained in Plaintiffs' Memorandum of Points and Authorities in Support of its Cross Motion For Partial Summary Judgment Against Defendants Harvest Marketing, L.L.C., First Harvest, L.L.C., and Frank L. Davis ("Plaintiffs' Statement").  These undisputed paragraphs and the cites to the record supporting these paragraphs establish that the Davis Defendants and Forschen in his personal capacity jointly agreed that Davis would apply for a loan, that they would use MFT's money to pay the upfront fee, and that once the loan proceeds were obtained, the Davis Defendants would retain 8% of the loan proceeds, MFT would be repaid, and Forschen would personally invest the balance of the proceeds in a high yield program.  Forschen would use the proceeds from the high yield program to pay off the Davis loan and retain the balance for his own use.  MFT would have no interest in the proceeds from that program.  The Davis Note was made so that Forschen could document for Mrs. Michelon the loan from  MFT to the Davis Defendants.  (See cites to record in support of

ii

paragraphs 1 through 21 in Plaintiff's Statement) Plaintiff notes that the only authority the Davis Defendants cite for their allegation that the Davis Note was made on "behalf of the Trust" is the Davis Note itself which contains no such language.

2.    *Defendant Frank Davis personally guaranteed the Davis Note.*

RESPONSE:  Plaintiff admits this statement.

3.    *Defendant Jae Forschen, trustee for the Trust, drafted the Davis Note.*

RESPONSE:  Plaintiff admits that Forschen drafted the Davis Note.  Plaintiff also admits that Forschen was a co-trustee of MFT.

4.    *Plaintiffs chose Forschen to be the trustee of the Trust and gave him authority to invest the Trust's funds.*

RESPONSE:  Plaintiff admits that Forschen was a co-trustee of MFT and that he had authority to invest MFT's funds.  The record does not establish who chose Forschen to be a co-trustee.  It is probably not material to any issue raised by the pending motions.

5.    *The Trustee made a note to Davis Defendants in his capacity as Trustee.*

RESPONSE:   Plaintiff admits that Forschen made a note to the Davis Defendants, but disputes that he signed it in his capacity as trustee of MFT.  Forschen clearly signed the Forschen Note in his personal capacity.  The sole authority cited by the Davis Defendants to support their claim that Forschen signed as trustee is the Forschen Note itself.  However, the note (Exhibit M) clearly indicates that Forschen signed it in his individual capacity.  The promise to pay is made by "Jae Forschen."  The signature line is made for "Jae Forschen".  The Michelon Family Trust is not mentioned either in the promise to pay or the signature line.  Moreover, the Forschen note

iii

was made from the same form as the earlier Davis Note.  The fact that Forschen referenced the

trust above his signature line in the Davis Note but deleted reference to the trust on his signature

line in the later Forschen Note further demonstrates that he signed the Forschen Note in his

individual capacity, not as trustee for MFT.  Moreover, the testimony of both Forschen and Davis

establish that Forschen signed the Forschen Note in his personal capacity to indemnify the Davis

Defendants in the event they had to pay MFT under the Davis Note.   Davis himself testified

about his unwillingness to sign the Davis Note unless he received Forschen's (not MFT's)

indemnity:

> A.      Right.  So I just said, you know, "There's no way I'm going to sign a
> note and obligate myself because I have no idea this loan is going to materialize or
> not."  And, you know, of course he assured me every which way but loose that the
> money was coming, that if it didn't come that way, it was coming another way,
> whatever, so – and I said, "The only way I'll do this is if you sign a note, you
> know, equal, identical note, saying that this is your responsibility," whatever.
> "The fact that you want the money that's coming into the corporation, or the
> money that's coming in Harvest Consulting on this loan, if you want to pay this
> money back out of that, I don't have a problem with it."  You know, and he
> wanted to do – have some document to evidence that that was going to happen.
>
> But I just said, "I'm unwilling to do it unless you indemnify me, or whatever,
> because I have no – I don't have the same level of confidence and faith you do
> that the loan's going to materialize. . . .
>
> So he took the original note and we wrote on the back of that, you know, that he
> was going to execute an identical note . . . .

(Davis Depo., p. 74, l. 4 through p. 75, l. 3 attached as Exhibit "B"; Forschen Depo., p. 146, l. 6

through p. 149, l. 16 attached as Exhibit "A")  Once Forschen agreed to give Davis his personal

indemnity note, Davis signed the Davis Note to MFT personally and on behalf of his companies,

and gave it to Forschen.  Forschen gave Davis a copy of the note with a hand written promise to

provide a note from Forschen personally to Davis and his companies.  The hand-written promise reads:

> I Jae R. Forschen personal [sic] will sign take over this note with all
> responicbles [sic] and obligations that will be belong to Jae R. Forshen
> [sic]
> 2/9/2000
>
> > [/s/] By Jae R. Forschen

Davis thought Forschen's personal promise on Davis' copy of the Davis Note needed further clarification.  So he wrote the following in his own hand writing just beneath Forschen's hand written promise:

> The note referrenced [sic] above is Promisory [sic] note between Michelon Family
> Trust and Harvest Marketing Dated 11/15/99 wherein Jae R. Forschen will
> execute a note with Frank Davis/Harvest Marketing taking over the liability of the
> note & all responsibilities associated with note.
>
> > [/s/] By Jae R. Forschen

(Davis Depo., p.100, l.23 through p. 103, l. 7 attached as Exhibit "B"; a copy of the hand written promise is attached as Exhibit "L")   It is clear from these hand written statements of both Davis and Forschen at the time of the signing of the Davis Note that the parties anticipated that Forschen would sign the Forschen Note in his personal capacity and not on behalf of MFT.

Testifying about these hand written notes, Davis himself testified:

> Q:  Do you know who wrote the top hand writing?
> A:  Jae did.
> Q:  Do you know who wrote the bottom hand writing?
> A:  I did.
> Q:  You'll note in the part that is Jae is writing, it indicates that he personally
>       will sign to take over the note.
> A:  Uh-huh.
> Q:  Is that right?
> A:  Yes.

Q:  And that those obligations will thereafter belong to Jae Forschen?
A:  Correct.
Q:  It doesn't say that the Michelon Family Trust will excuse the note or that it will discharge that obligation itself, does it?
A:  No.
Q:  And then you apparently wrote something else beneath that, is that correct?
A:  That's correct.
Q:  Is that because you weren't satisfied with what Jae had written?
A:  That's correct.
Q:  In fact, he doesn't describe the note very well, does he?
A:  That's right.
Q:  So you kind of add some more detail so that it's very clear what note is being referenced in the writing?
A:  Correct.
Q:  And you indicate that the note being referenced is the note between Michelon Family Trust and Harvest Marketing?
A:  That's correct.
Q:  And you even include the date, November 15, 1999?
A:  Right.
Q:  And then you indicate that Jae Forschen individually will execute a note, right?
A:  Correct.

(Davis Depo., p. 101, l. 12 through p. 103, l., 3 attached as Exhibit "B")   Similarly, Forschen

testified:

Q:  In this note that we have just read on Exhibit 11, you don't sign in either place on behalf of the Michelon Family Trust, do you?
A:  No.
Q:  In fact, you have used the word yourself in your paragraph, this is a personal obligation?
A:  Yes.
Q:  And similarly in the part that Frank writes, he indicates that you as an individual, not the Michelon Family Trust, were going to execute the note?
A:  Yes.

(Forschen Depo., p. 148, ll. 5 through 15, attached as Exhibit "A")

Davis also testified that he understood Forschen actually signed the Forschen Note in his

vi

personal capacity rather than as trustee for MFT.

> Q:   Now, if you'll take a look at the next page, is this the note that you were
>       talking about that Jae prepared as your indemnity note?
> A:   Correct.
> Q:   You'll notice it's dated February 15, 2000.
> A:   That's correct.
> Q:   And Jae himself is promising to pay the sum of $175,000 and zero cents to
>       the Michelon Family Trust on behalf of Harvest Marketing/First Harvest
>       and Frank Davis' personal guarantee of the note dated 15 November
>       1999?
> A:   Correct.
> Q:   And then if you look down, at the bottom, its got Jae signing personally.
> A:   That's correct.
> Q:   Not as a trust officer or on behalf of Michelon, right?
> A:   Correct.

(Davis Depo., p, 76, ll. 4 through 21, attached as Exhibit "B")  Forschen also concedes that he

signed the Forschen Note in his personal capacity.  He explained that the Davis Defendants have

an obligation to pay MFT and he has a personal obligation to indemnify the Davis Defendants.

> Q:   You understand that Frank and his company have an obligation to pay that
>       note?
> A:   Yes.
> Q:   You also understand that you have an obligation to Frank and his company
>       to take care of that obligation for him?
> A:   Correct.
> Q:   That's a personal obligation?
> A:   Yes.
> Q:   As far as you know Frank and his company have not fulfilled their note
>       obligation to the Michelon Family Trust, have they?
> A:   No, they have not.

(Forschen Depo., p. 153, ll. 12 through 24, attached as Exhibit "A")

6.      *The Trustee gave Davis Defendants an indemnity agreement which was written on*

*the back of the Davis Note.*

RESPONSE:   Plaintiff admits that Forschen signed two statements on the back of a copy of the Davis Note and delivered it to Davis.  The statements were clearly signed by Forschen in his individual capacity, and not as trustee of MFT.  (See authorities cited in response to 5., above)

7.      *The Trustee told Davis that Davis would not have to pay back the Trust any money if the loan did not fund, which goes to Davis' estoppel and fraud defenses.*

RESPONSE:   Plaintiff disputes this statement.  The deposition quote cited by the Davis Defendants does not support this statement.  As set forth in the quotations contained in 5 above, Forschen expected the Davis Defendants to honor their obligations to MFT under the Davis Note.  He intended to personally indemnify them under the Forschen Note if they indeed were required to pay any amount under the Davis Note.  (See authorities cited in 5 above).

8.      *The Trustee was the one pushing the efforts to obtain a loan which was his idea in the first place because of the "problem" he created with the Trust.*

RESPONSE:   Plaintiff admits that Forschen suggested the loan venture to Davis. Plaintiff also admits that Forschen testified that he suggested the loan to help Davis with his debt problem and to solve a problem Forschen had created for MFT.  However, Plaintiff disputes that there was a problem with MFT at the time Forschen approached Davis.  This is evidenced by the undisputed fact that Davis received loan commitment papers the day **BEFORE** MFT's funds were wired to the account of Rehab by L&M, Inc.  Prior to that date, those funds were still under Forschen's control at Pinnacle Title.  (See paragraphs 11 through 17 of Plaintiff's Statement which are not disputed by the Davis Defendants)

9.      *The Trustee testified that he expected the Davis Note to be fulfilled when the loan in question funded.*

RESPONSE:   Plaintiff admits that Forschen testified that he expected the Davis Note to be paid when the loan in question funded.   However, nothing in Forschen's testimony suggested that any obligation under the Davis Note would be altered if the loan did not fund prior to the March 3, 2000 due date. (Forschen Depo., p, 152, l. 7 through p. 153, l. 24, attached as Exhibit "A").

10.      *Only 8% of the loan was to go to the Davis Defendants; the remaining 92% was supposed to go to the Trust to be invested for "high-yield" purposes by the Trustee.*

RESPONSE:   Plaintiff admits that only 8% of the loan proceeds were to the Davis Defendants.  Plaintiff also admits that the remaining 92% of the proceeds were to go to Forschen for investment in a high-yield program.   Plaintiff disputes that Forschen would receive such proceeds as trustee.   Rather, he was to receive them in his personal capacity, invest them in his personal capacity and use the proceeds from that program to pay off the Davis loan with the residual belonging to himself personally.   There is nothing in the deposition excerpt cited by the Davis Defendants that suggests Forschen would act on behalf of MFT in re-investing the loan proceeds in his high-yield program. (Davis Depo., p. 65:15 through p. 66, l. 12, attached as Exhibit "B")

ix

## ARGUMENT

## I.     THERE ARE NO ISSUES OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT

The Davis Defendants claim there are issues of material fact which preclude summary judgment. However, the issues raised by the Davis Defendants are primarily legal issues, not factual issues. None of the issues raised by the Davis Defendants defeat the validity of the Davis Note or otherwise excuse the Davis Defendants from performing those obligations.

### A.     Forschen Signed the Forschen Note in his Personal Capactiy.

The Davis Defendants argue that Forschen signed the Forschen Note in his capacity as trustee of MFT rather than in his personal capacity. They then argue that MFT replaced the Davis Note with the Forschen Note which they claim is the Trust's own note. (See II.A. beginning on p. 2 of the Davis Defendants' Memorandum) They therefore conclude that the Davis Note is no longer valid. However, the Davis Defendants' argument fails on its premise that Forschen signed the Forschen Note in his capacity as trustee of MFT rather than in his personal capacity.

It is the exclusive province of the Court to interpret contracts, including the Davis Note. "The underlying purpose in interpreting [the Forschen Note] is to ascertain the intentions of the parties." *WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88, para. 17. To determine the parties' intentions expressed in a document, the Court first looks at the four corners of the document itself. If the document is ambiguous, the Court may consider extrinsic evidence to determine the parties' intent.

1

In this case, all of the evidence elicited by the parties demonstrates that the parties intended Forschen's signature on the Forschen Note to be in his individual capacity and not as trustee of MFT.  First, the Forschen Note itself indicates in three places that the signatory and obligor is Jae Forschen personally.  There is no ambiguity that requires the Court to look beyond the four corners of the note itself.  But even if the Court were to consider extrinsic evidence, it points overwhelmingly to the same conclusion.

At the time Davis signed the Davis Note, he extracted a signed agreement from Forschen to give Davis a note with Forschen's personal promise to indemnify him should the Davis Defendants have to pay on the Davis Note.  The hand written statements on the back of the copy of the Davis Note signed by Forschen both state clearly that the Forschen Note will be a personal obligation of Forschen.  (See Exhibit "L")  Both Davis and Forschen testified in their depositions that they understood that the hand written statements to reference a note to be signed by Forschen personally.  (Davis Deposition, p. 101, l. 12 through p. 103, l., 3 attached as Exhibit "B"; and Forschen Deposition, p. 148, ll. 5 through 15, attached as Exhibit "A")  Similarly, both Davis and Forschen testified that when Forschen actually signed the Forschen Note, they understood he signed it in his personal capacity and not as the trustee of MFT.  ((Davis Depo., p, 76, ll. 4 through 21, attached as Exhibit "B"; and Forschen Depo., p. 153, ll. 12 through 24, attached as Exhibit "A")

2

All of the relevant evidence confirms that the Forschen Note was Forschen's personal obligation, not a reciprocal note from MFT.[1]  This issue is not an issue of material fact precluding summary judgment.  Rather it requires interpretation of the Forschen Note which is a legal issue for the Court.  Plaintiff submits that the note itself and the testimony of Davis and Forschen conclusively demonstrate that the parties intended Forschen to sign the Forschen Note in his personal capacity.  The Davis Note was not retired, extinguished or cancelled.  As Forschen clearly testified, the Davis Defendants had an obligation to MFT, and he had a personal obligation to the Davis Defendants to indemnify them for any amounts they paid MFT pursuant to the Davis Note. (Forschen Depo., p. 153, ll. 12 through 24, attached as Exhibit "A")

**B.      The Davis Defendants Have Not Raised Any Issue of Fact Regarding Estoppel Based Upon Forschen's Representations.**

The Davis Defendants allege that Forschen represented to Davis that the Davis Defendants' obligations under the Davis Note were "contingent upon the Trustee obtaining the loan in question."  However, the Davis Defendants fail to provide any evidence that the Trustee made the alleged statements.  Although the Davis Defendants provide citations to the Davis and Forschen depositions, none of those cites supports their allegation.  It is clear from the deposition excerpts quoted in Plaintiff's response to paragraph 5 of the Davis Defendants' Statement of

---

[1] The Davis Defendants acknowledge that the purpose of the Davis Note was to persuade the MFT beneficiary that the trust funds had been loaned to Davis and that there was a note from Davis and his companies promising repayment.  They also acknowledge that they knew Forschen would not show Ms. Michelon the hand written notes referring to the Forschen Note, or the Forschen Note.  By trying to avoid their obligations under the Davis Note, they seem to imply that they were complicit in an attempt to defraud Ms. Michelon.

3

Additional Facts, that the parties intended that the Davis Note be given to MFT to satisfy Mrs.

Michelon and that Forschen made the Forschen Note to the Davis Defendants as an indemnity in

the event the Davis Defendants were required to pay the Davis Note.  There was never any

representation made that the Davis Defendants would not have to pay under the Davis Note if the

Davis loan did not materialize.  The Davis Defendants have not cited the Court to any evidence

giving rise to an issue of material fact with respect to their claim of misrepresentation or

estoppel.

### C.     The Davis Note is Not Unconscionable

The Davis Defendants claim that the Davis Note is unconscionable because of the amount

of interest it requires.   This argument, too, lacks merit.

Plaintiff notes at the outset that unconscionability is an affirmative defense which the

Davis Defendants had to raise in their answer if they intended to assert it.  (See Rule 12(b)

F.R.Civ. P.)  As the Davis Defendants failed to assert unconscionability as an affirmative

defense, they have waived any such defense and cannot assert it for the first time at this late date

in response to a motion for summary judgment.

Moreover, the Davis Defendants' assertion of unconscionability fails as matter of law.

They cite *Ryan v. Dan's Food Stores, Inc.*, 972 P. 2d 395 (Utah 1998), to support the proposition

the Davis Note is unenforceable because it is unconscionable.  While they accurately quote the

portion of the opinion cited in their memorandum, the Davis Defendants fail to provide the full

context of the quote.  Ryan was an employee of Dan's Food Stores, Inc.   He was fired because

of repeated complaints about the manner in which he treated customers.  Dan's claimed that

4

Ryan was an employee-at-will and that it could terminate Ryan for any reason at anytime as set

forth in the employee hand book.  Ryan claimed, among other things, that the provision allowing

Dan's to fire him at anytime for any reason was unconscionable.  In its discussion of the doctrine

of unsconsionability, the court noted:

> A party claiming unconscionability bears a heavy burden.  *See Resource Management Co. v. Western Ranch,* 706 P. 2d 1028, 1041 (Utah 1985).  The law enables parties to freely contract, establishing terms and allocating risks between them.  *See id.* at 1040-41.  The law even permits parties to enter into unreasonable contracts or contracts leading to a hardship on one party.  *Bekins Bar V Ranch v. Huth,* 664 P. 2d 455, 459 (Utah 1983). . . .

> Unconscionability, while defying precise definition, "has generally been recognized to include absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Resource Management Co.,* 706 P. 2d at 1043 (quoting *Williams v. Walker-Thomas Furniture Co.,* 350 F. 2d 445, 449 (D.C. Cir. 1965)). . . .

> Even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable–the terms must be "so one-sided as to oppress . . . an innocent party."  *Id.*

The court held that Ryan did not meet the heavy burden of showing that he was an

innocent party who had no choice but to agree to be bound by the employee hand book.  Dan's

right to "terminate him at anytime for any reason or no reason" was not substantively

unconscionable.

Similarly, the Davis Defendants fail to meet the heavy burden they bear to demonstrate

unconscionability in this case.  They had a choice whether to sign the Davis Note or not.  They

were not acting under any duress or undue influence at the time.  The fact that Davis refused to

sign the Davis Note unless he received Forschen's personal indemnity shows that he had a

"meaningful choice." Moreover, Davis was not an "innocent" party. He was a joint venturer with Forschen in attempting to procure loan funds through use of MFT's funds to pay the loan fee and misrepresentation to potential lenders regarding the use of the loan proceeds. Davis certainly was not oppressed.

The Davis Defendants argue that the return of $75,000 on the note was for use of the funds for only two weeks. However, the funds were loaned to Davis on November 18, 1999 when they were sent to the account of Rehab by L&M, Inc. on Davis' behalf. Even the Davis Note is dated November 19, 1999, to reflect the actual date the funds were borrowed. Although the interest rate in the Davis Note is high, it is not out of line with amounts charged by hard money lenders in the business world. Davis was not a victim of oppression from a person in greater bargaining position. He was a business man who signed the Davis Note evidencing his obligation to repay the funds he borrowed from MFT to process his loan. The doctrine of unconscionability does not excuse the Davis Defendants from their obligations under the Davis Note. The Davis Defendants have failed to raise any issue of fact with respect to this tardily asserted defense.

**D.    The Davis Note is Supported By Consideration**

The Davis Defendants next allege that there is no consideration to support the Davis Note. As already shown in Plaintiffs' initial memorandum supporting its motion, consideration was provided through the initial funds MFT loaned to Davis, the Forschen Note, and MFT's forbearance of legal action.

1.      **Use of MFT Funds**

The Davis Defendants do not dispute that: (a) Davis and Forschen used MFT's funds to pay the up-front loan fee for the Davis loan; (b) that Forschen told Ms. Michelon that the Davis Defendants had signed a promissory note documenting their obligation to repay those funds by March 3, 2000 with $75,000 in interest; and (c) that Davis understood MFT would be repaid the funds it loaned Davis. Davis merely argues that because the Davis Note itself did not mention the funds loaned by MFT that those funds cannot constitute consideration for the Davis Note. That position is absurd. First, most promissory notes in the commercial world do not describe the consideration for the promissory notes. Second, the Davis Note itself stated that "The Promissory Note is a final expression of the terms and conditions of this loan transaction between Michelon Family Trust and Harvest Marketing/First Harvest." It is clear from this statement signed by Davis that there was a loan transaction between those parties and the Davis Note contained the unperformed terms and conditions of that transaction. MFT's payment of the loan fee for the Davis Loan alone is sufficient consideration for the Davis Note.

2.      **The Forschen Note**

The Davis Defendants argue that the Forschen Note cannot serve as consideration for the Davis Note since the obligation under the Forschen Note was personal to Forschen and did not come from MFT. However, it is horn book law that consideration to a promissor need not be provided by the promissee, but can be provided by a third party.

A case much on point that has been law in this jurisdiction for over a century is *Utah Nat. Bank of Salt Lake City v. Nelson,* 111 P. 905 (Utah 1910). The facts in that case are very similar

7

to those in the instant case.  The bank's mandatory reserve funds were stolen.  In order to avoid a

run on the bank, Nelson (a bank officer) agreed to give the bank his personal promissory note for

$13,250 if the another officer would deposit $50,000 into the bank's reserve account.  When the

bank sued to recover on the note, the bank officer defended on the ground of failure of

consideration.  Specifically, he alleged that since he personally did not receive any benefit from

the other officer's $50,000 payment and because the bank gave him nothing for his note, there

was no consideration.  In a lengthy discussion of the issue, the Utah Supreme Court adopted the

rule that:

> A consideration to a third party may be an inducement to a person to give his note,
> and in such case the promise is just as binding as though the promisor had
> received the benefit.

*Id.* at 913.  The Court also cited with authority the following:

> A valuable consideration of some sort, it will be conceded, is, under the statute
> of this country, essential to the validity of a note; but, if it be a consideration of
> value, it is totally immaterial from who it moves.  Whether it be the obligee or
> from any other person, it carries with it the same legal operation and
> communicates to the note the same validity.

*Id.* at 914.

Nelson was required to pay on his note even though his promise to pay was largely for the

benefit of the bank.  The other officer's promise to pay the bank $50,000 was sufficient

consideration to support Nelson's note even though Nelson was not the beneficiary of the

promise.

Similarly, in this case, Forschen gave his note to the Davis Defendants in return for their

note to MFT.  MFT is entitled to enforce its note even though the consideration to the Davis

8

Defendants came from Forschen rather than from MFT.

### 3. MFT's Forbearance Was Additional Consideration

The Davis Defendants do not deny that MFT forbore action against Forschen (and possibly Davis) in reliance on the Davis Note. Rather, they argue that MFT's forbearance cannot be consideration since it did not benefit Davis.

As set forth above in *Utah Nat. Bank of Salt Lake City v. Nelson, supra,* it does not matter whether Davis was a beneficiary of the forbearance. A promise to pay is enforceable even if the forbearance was for the benefit of a third party, in this case at least Forschen. MFT's forbearance was adequate consideration to support the Davis Note.

### CONCLUSION

The Davis Defendants have failed to demonstrate the existence of any genuine issues of fact material to the Court's resolution of Plaintiff's Cross Motion for Partial Summary Judgment. The issues raised by the Davis Defendants are primarily legal issues. As the authorities cited demonstrate, the Davis Note was enforceable as it was supported by consideration. The Davis Note itself as well as the testimony of both Davis and Forschen conclusively show that the parties intended the Forschen Note to be Forschen's personal note. The Davis Defendants have failed to cite the Court to any false statements made by Forschen to Davis to indue the signing of the note. There are no genuine issues of material fact precluding an award of summary judgment against the Davis Defendants on the Davis Note.

9

DATED this 13ᵗʰ day of June, 2005.

**KIRTON & McCONKIE**

By: _David M Wahlquist_____
       David M. Wahlquist
       Daniel J. McDonald
       Attorneys for Plaintiff

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _13th_ day of June, 2005, I caused to be served a true

copy of the foregoing **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN**

**SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** by the

method indicated below, to the following:

Stephen Quesenberry                              (X) U.S. Mail, Postage Prepaid
HILL, JOHNSON & SCHMUTZ, L.C.                    ( ) Hand Delivered
Jamestown Square                                 ( ) Overnight Mail
3319 North University Avenue                      (X) Facsimile
Provo, UT 84604
Attorneys for Defendants Frank Davis, Harvest
Marketing, LLC and First Harvest, LLC

David J. Orr, Pro Se                             (X) U.S. Mail, Postage Prepaid
5449 Suntree Avenue                              ( ) Hand Delivered
West Valley, UT 84120                            ( ) Overnight Mail
                                                 ( ) Facsimile

Jae Forschen, Pro Se                             (X) U.S. Mail, Postage Prepaid
406 East 3335 South, Apt. 16                     ( ) Hand Delivered
Salt Lake City, UT 84115                         ( ) Overnight Mail
                                                 ( ) Facsimile


_Anita Major_

11